IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LYNN BUCK, et al.,

    Plaintiffs,

    vs.          No. CV 04 - 1000 WPJ/DJS

CITY OF ALBUQUERQUE et al,

    Defendants.

### MEMORANDUM OPINION AND ORDER ON *DAUBERT* MOTIONS

THIS MATTER comes before the Court upon:

(1)     Defendants' Motion in Limine I Seeking Exclusion of Plaintiffs' Police Procedures Expert, filed January 31, 2006 (**Doc. 110**); and

(2)     Plaintiffs' Motion in Limine Seeking Limitations on Certain Expert Opinion Testimony of Defendants and Plaintiffs Police Procedures and Practices Experts, filed July 7, 2009 (**Doc. 255**).

### BACKGROUND

In this case, Plaintiffs assert claims for damages caused by the violation of their civil and constitutional rights and by tortious conduct on the part of the Defendants while the Plaintiffs attended a demonstration against the war in Iraq on March 20, 2003. These motions address the testimony of Mr. Lou Reiter, Plaintiffs' police procedures expert regarding the generally accepted police practices of the Albuquerque Police Department ("APD"), and regarding the use of force. Mr. Reiter retired from 20 years of law enforcement in 1981 and has since then been a private police consultant.

### I.     Procedural Background

At the hearing, parties represented to the Court that they do not challenge the qualification of their respective experts. Instead, Defendants challenge the reliability of Mr. Reiter's testimony. Defendants' expert on police procedures is Fire Chief Bobby Halton, as

identified in the Pretrial Order (Doc. 291 and 62).  However, Plaintiffs do not expressly challenge his testimony, but seek to limit and clarify what testimony is proper and admissible in the context of their First and Fourth Amendment claims.

Defendants challenge Mr. Reiter's testimony under *Daubert* standards as well as under general evidentiary standards.  In fact, the bulk of both motions deal with the question of whether the evidence will be helpful to the jury (Fed.R.Evid. 702) and whether it is more probative than prejudicial under Rule 703.  The Court heard oral argument on some of the issues raised in these motions, specifically with regard to Plaintiff's motion in limine on police procedures testimony.  At the hearing, held on August 25, 2009, the Court ruled that parties could both use a police procedures expert in order to provide a jury with some background or context for comparison when the jury is trying to determine whether officers acted with impermissible retaliatory motive as part of Plaintiffs' First Amendment claim.  Doc. 283 at 3.

Both parties raise the same issues in their motions.  Thus, the Court will not rule on the motions separately, but will address the issues argued in the motions by category.

**II.     Law on *Daubert***

Rule 702 of the Federal Rules of Civil Procedure imposes upon the trial judge an important "gate-keeping" function with regard to the admissibility of expert opinions.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 597 (1993), the United States Supreme Court explained that Rule 702 assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant. *See Dodge v. Cotter Corp*., 328 F.3d 1212, 1221 (10th Cir. 2003) (trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline). The gate-keeping function involves a two-step analysis. First, the Court must determine whether the expert is qualified by "knowledge, skill, experience, training or education" to render an opinion. See Fed.R.Evid. 702.

Second, if the witness is so qualified, the Court must determine whether the expert's opinions are "reliable" under the principles set forth under *Daubert*, 509 U.S. 579, and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999); *see Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965 (10th Cir. 2001).

Some factors that a Court considers in determining the scientific validity of the underlying methodology and reasoning are (1) whether the opinion has been subjected to testing or is susceptible of such testing; (2) whether the opinion has been subjected to publication and peer review; (3) whether the methodology used has standards controlling its use and known rate of error; and (4) whether the theory has been accepted in the scientific community. *Bitler v. A.O. Smith Corp.*, 391 F.3d 1114, 1120 (10th Cir. 2004). This list is neither exhaustive nor definitive, and a judge has wide discretion in deciding how to assess an expert's reliability. *Id.*

*Daubert* itself was limited to scientific evidence, *see United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009) but in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court made clear that the gatekeeping obligation of the district courts described in *Daubert* applies, not just to scientific testimony, but to all expert testimony. *Id.* at 141. While a district court may consider the *Daubert* factors in determining the admissibility of non-scientific expert testimony to the extent they are relevant, *id.* at 150, "the test of reliability is flexible, and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 141-42.

## DISCUSSION

The Court will address in turn, Mr. Reiter's testimony concerning APD's general violations of accepted police practices or standard operating procedures ("SOP") in the context

of Plaintiff's Fourth Amendment and First Amendment claims, testimony on the use of force, and testimony concerning APD's "Code of Silence."

## I.  Testimony on General Violations of Accepted Police Practices

Defendants contend that Mr. Reiter's generalized opinion that APD actions were contrary to generally accepted police practices (SOP) is irrelevant, unduly prejudicial to Defendant officers and will confuse the jury. Mr. Reiter describes these SOP's as practices and standards which have become generally accepted as they developed over time and includes a description of errors made by the APD, many of which were formalized in Police Oversight Commission ("POC") reports (Ex. A at 8-11), and suggested that many uses of force were unreasonable, e.g.: (I) multiple and confusing commands to crowds; (ii) police commands and force preventing protestors from attempting to peacefully march; (iii) faulty police intelligence information leading to inaccurate receptions by field level personnel (e.g., assuming a group of persons armed with bludgeoning tools were "anti-war" when they were really "pro war" supporters); (iv) lack of documentation regarding individuals on whom projectile force tools were used, and no accounting for munitions used; (v) police use of profanity and unprofessional verbalization with the crowd; failure to ensure audio and video recordings were made of commands and incidents leading to arrests; and (vi) use of chemical agents on individuals conducting legitimate business at the demonstration.

Defendants contend that general allegations of SOP violations are irrelevant in a § 1983 claim, because § 1983 claims must be based on personal involvement in the alleged constitutional violation. *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Defendants also argue that this kind of testimony is not relevant to a Fourth Amendment inquiry, and therefore must be excluded under *Daubert's* relevant inquiry. The weight of the case law is on Defendants' side. SOP requirements viewed in a vacuum are not relevant to the sometimes split-

second decisions officers must make within a totality-of-the-circumstances inquiry. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314 (10th Cir. 2002) (a "court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances") (quoted case omitted); *Tanberg v. Sholtis*, 401 F.3d 1151 (10th Cir. 2005) (fact that the SOP, which duplicated the reasonableness standard for excessive force claims, required precisely what the law required of defendant officer, did not make it more or less likely that officer's use of force was reasonable; and finding that SOP testimony was not relevant).[1]

Plaintiffs attempt to avoid the inevitable by conceding that Mr. Reiter will not opine on *individual* officer liability, but rather will testify about the *collective* failure of the police department to follow generally accepted police practices in the deployment of the individual officers, including the supervisors and public officials. Plaintiffs argue that expert testimony on

---

[1] The Hon. James O. Browning referred to both *Marquez* and *Tanbert* in his thorough analysis of the issue in *Chamberlain v. City of Abq et al*, unpubl. opin., 2005 WL 2313538 (No. CIV 02-603 JB/ACT, Doc. 145 (D.N.M.,2005 ). Judge Browning did not allow in expert testimony regarding the APD's SOPs. Nor did the Hon. James A. Parker in *Smith v. Stover*, Civil No. 95-1471 (Doc. 127, filed 12/9/97, attached as Ex. A to Deft's reply (Doc. 147)).

The Tenth Circuit offers many other examples which favor Defendants' position in seeking to exclude testimony of SOP's in Fourth Amendment claims. *See Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001) (citations omitted) (recognizing that claims based on violations of state law and police procedure are not actionable under § 1983"); *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005) (disagreeing with the plaintiff's contention that expert testimony about when a police dog's use is objectively reasonable, and recognizing that "even if the officer did use more than the minimum amount of force necessary and violated police procedure, the jury could nonetheless find that the officer); *Wilson v. Meeks*, 52 F.3d 1547, 1554 (10th Cir. 1995) (holding that "violation of a police department regulation is insufficient for liability under § 1983" claim for excessive force); *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314 (10th Cir. 2002) (the proper perspective from which to evaluate the conduct of a police officer--that "of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances"); *Romero v. Board of County Com'rs of County of Lake, State of Colo.*, 60 F.3d 702, 705 (10th Cir. 1995) (violations of state law and police procedure generally do not give rise to a § 1983 claim).

police practices and procedures should be allowed in the context of demonstrations, crowd control, riots, and civil disobedience.  Doc. 255 at 1.  This is a distinction without a difference.  While testimony on the "collective" failures of the APD might be more relevant to a municipal liability claim, this claim was dismissed previously by Judge James A. Parker, who presided over this case initially.  *See* Doc. 222 at 28.[2]  Also, Mr. Reiter's testimony on "collective" APD practices is collateral to the Fourth Amendment inquiry on which the jury should be focusing.  The question for the jury will be whether each of officer's use of force against a named Plaintiff was objectively unreasonable – not whether APD personnel collectively violated SOP's.

Further, I agree with Defendants that even if evidence regarding the collective actions of the APD are relevant, such evidence should be excluded under Rule 402 as unduly prejudicial and confusing to the jury.  Defendants would be required not only to defend their own actions, but the actions of the group collectively.

## II.   Mr. Reiter's Testimony on First Amendment Issues

Defendants object to that portion of the expert report in which Mr. Reiter opines that APD's failure to follow generally accepted practices was "significant in curtailing the protestors ability to peacefully gather to voice their criticism of governmental policies."  Ex. A at 7-8.  Defendants argue that this testimony is improper and not helpful to the jury because the issue is within the common knowledge of the jury and because it would serve no purpose other than to vouch for Plaintiffs' credibility.[3]  Plaintiffs respond by stating simply that Mr. Reiter has no

---

[2] There is still a supervisory liability claim left against only Defendant Gonzales.  See Partial Summary Judgment (Doc. 205).

[3] *See Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002) (the 'touchstone' of admissibility of expert testimony is its helpfulness to the trier of fact. . . "When the normal experiences and qualifications of laymen jurors are sufficient for them to draw a proper conclusion from given facts and circumstances, an expert witness is not necessary and is improper.") (citations omitted); *U.S. v. Charley*, 89 F.3d 1251, 1267 (10th Cir. 1999) ("In general, expert testimony which does nothing but vouch for the credibility of another witness

intention of invading the province of the jury.

The Court finds merit to the positions of both parties. Plaintiffs correctly point out that First Amendment claims contain a subjective element which calls for an inquiry into a defendant's state of mind.[4] As noted earlier, the Court has already ruled that both parties could use a police procedures expert in order to provide background or context for comparison when the jury is trying to determine whether APD officers acted with impermissible retaliatory motive as part of Plaintiffs' First Amendment claim. Doc. 283 at 3. However, the Court agrees with Defendants that conclusive testimony on the effects of the officers' conduct that day would be improper because Mr. Reiter is in no better position than a jury to assess the effects of the officers' actions on a reasonable person. Such testimony would be tantamount to Mr. Reiter forming and publishing to the jury a legal conclusion regarding the merits of Plaintiffs' First Amendment right to associate. Therefore, I will allow Mr. Reiter to testify as to police procedures relevant to demonstrations, crowd control, riots, and civil disobedience. However, Mr. Reiter may not opine on any conclusions regarding whether APD's conduct had an effect on the protestors' ability to gather and demonstrate. That conclusion should be made by the fact finder based on the testimony of Mr. Reiter and other witnesses, and other evidence which will be presented at trial.

### III.    Use of Force

---

encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not "assist the trier of fact" as required by Rule 702").

[4] To establish a violation of the First Amendment right to associate, Plaintiffs must demonstrate: "(1) that [they were] engaged in constitutionally protected activity; (2) that Defendants' actions caused Plaintiffs to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that Defendants' adverse action was substantially motivated as a response to [plaintiffs'] exercise of constitutionally protected conduct." *Perez v. Ellington*, 421 F.3d 1128, 1131 -1132 (10th Cir. 2005) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212-13 (10th Cir. 2000)).

Next, Defendants object to Mr. Reiter's testimony regarding the officers' use of force – specifically, the use of chemical agents such as pepper spray to disperse the protestors. Mr. Reiter believes that it is unreasonable for a an officer to use chemical agents when a protestor refuses to obey a lawful order to leave the area, and opines that an officer may use chemical agents only to effect an arrest, overcome resistance, to protect oneself, or to prevent major property destruction. According to Mr. Reiter, the police have no "legal authority" to use force if a protestor is disobeying a lawful order by "simply standing there" and the officer does not intend to arrest the subject. See Ex. A at 8; Ex. B at 70:10-17; 76:10-16; 77:21-23 (if a person "refuses to leave, you get to write them a ticket or you get to arrest them."). Defendants have several problems with this area of testimony: that it is not reliable under *Daubert*, that it embraces the ultimate issue of liability, and that it must be excluded under a Rule 403 balancing. Defendant's objections to Mr. Reiter's testimony have some merit on these grounds, and as a result, Mr. Reiter's testimony will be limited on this issue, for reasons which follow.

A.   Reliability

Defendants contend that Mr. Reiter's opinion that APD personnel used excessive force by deploying pepper spray to disperse the protestors who refused to clear the area does not meet *Daubert* requirements of reliability because Mr. Reiter does not base this testimony on any policies, procedures, training manuals or cases which prohibit the use of chemical agents to disperse a large crowd of passive protestors.

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court noted the flexible character of the gatekeeping function:

> the test of reliability is flexible, and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination."

8

*Id.* at 141-42.  The trial judge "must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline." *See Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003).

It is true that Mr. Reiter did not identify the specific basis for his opinion that an officer cannot lawfully use chemical agents to disperse a crowd of protestors.  See Ex. B attached to Doc. 110, at 70:1-17; 77:1-25.  Also, Plaintiffs attribute the basis of Mr. Reiter's opinion to "articles by experts in the field of police practice and procedure, as well as model policies," yet do not identify specific sources.  Resp. (Doc. 124) at 15, n.4.  However, in his deposition, Mr. Reiter stated that he relied on his "specialized knowledge, experience and training" in determining the appropriateness of APD's use of force.  *See* Doc. 110, Ex. B:18-23.  Mr. Reiter also explained the reasons for the non-applicability of "reactive control model" in situations other than a one-on-one situation.  Ex. B at 70-73.  He has personal experience of fifteen years with supervision and management of crowd control involving urban riots, political protests and school unrest. Mr. Reiter's testimony is exactly the kind of testimony envisioned under *Kumho*, where the formalized *Daubert* factors may not apply.  Thus, I find that Mr. Reiter's knowledge, personal experience and skill combine to form a reliable basis in the discipline relating to a knowledge of police procedures and its applications. Defendants's objections to Mr. Reiter's testimony would go to weight, and not admissibility.

While I find that Mr. Reiter's testimony has a reliable basis under *Kumho*, I nevertheless find that Mr. Reiter's testimony must be limited on other grounds.  For instance, Mr. Reiter's background and qualifications do not necessarily render his testimony reliable in coming to any conclusions as to whether the officers – collectively or not – used excessive force, either by the use of chemical weapons or by other means.  I come to this conclusion for the same reasons I gave in precluding Mr. Reiter's testimony on police procedures in the context of Fourth

9

Amendment claims. Hindsight is a wonderful thing, but is absolutely useless when judging the appropriateness of an officer's use of force. *Graham v. Conner*, 490 U.S. 386, 396 (1989) (the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"). The facts of this case have not yet unfolded, and it is for the jury to view those facts and determine the reasonableness of the APD officers' conduct.

I do find that Mr. Reiter may testify regarding types of tools available to officers in a demonstration situation, as such testimony would have a reliable basis under *Kumho*, would be helpful to the jury, and is more probative than prejudicial.

B.      Ultimate Issue of Liability & Balancing under Rule 403

The issues addressed in the section immediately preceding this section flow into this next issue. Defendants seek to exclude Mr. Reiter's testimony that APD personnel used excessive force because it embraces the ultimate issue of liability. Defendants also argue that the prejudice of Mr. Reiter's testimony substantially outweighs its probative value under Rule 403 in that the jury may take his conclusions as facts instead of realizing it is simply Mr. Reiter's own application of the law to the facts. Plaintiffs state that Mr. Reiter's statements reflect only responses to inquiries which were put to him during his deposition, and do not necessarily reflect what his testimony will be at trial.

The Federal Rules of Evidence allow an expert to offer opinion evidence even when it "embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704(a). *U.S. v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005). However, an expert may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment. *See United States v. Simpson*, 7 F.3d 186, 188-89 (10th Cir.1993). Expert testimony of this sort is sometimes

excluded on the ground that it "usurps the function of the jury in deciding the facts, or interferes with the function of the judge in instructing the jury on the law." *Id*. at 188. *See also U.S. v. Samara*, 643 F.2d 701, 705 (10th Cir. 1981) (general rule is that an expert "may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility").[5]

Despite Plaintiff's assurances that Mr. Reiter does not intend to comment at trial on the legal boundaries of a police officer's use of chemical weapons, the Court feels obliged to make clear what those boundaries will be. Any testimony regarding whether the officers acted with unreasonable force under the circumstances, whether the use of chemical weapons was appropriate in those circumstances, or whether officers can lawfully use chemical agents to disperse a crowd of protestors, belongs in the category of evidence which (1) usurps the jury's function under Rule 704; (2) is more prejudicial than probative under Rule 403; and (3) renders a judgment based on an undetermined set of facts, which is for the jury to assess. Accordingly, this evidence will be excluded.

## IV.     Code of Silence

Mr. Reiter defines the Code of Silence as "the reluctance of police employees to give adverse or negative information or testimony about fellow police employees. Ex. B at 15. In this case, no officer was willing to identify who used force or what specifically occurred when the force was used. Defendants argue that Reiter's testimony on the Code of Silence does not meet the reliability requirements of *Daubert* in that Mr. Reiter bases his testimony on no

---

[5] *See also U.S. v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) (expert testimony that "undertakes to tell the jury what result to reach . . . does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's"; such testimony exceeds proper role of expert, which is "providing the groundwork in the form of an opinion to enable the jury to make its own informed determination"); *Olson v. Ford Motor Co.*, 481 F.3d 619, 626 (8th Cir. 2007) (neither Rule 702 nor *Daubert* permits a district court to invade the province of the jury).

11

generally accepted training material (other than his own) which have used the same background information to develop the Code of Silence factors. Also, Defendants argue that this testimony regarding the Code of Silence is unduly prejudicial and irrelevant because Mr. Reiter conceded he had no basis to believe the Code was systemic within the APD. Defendants also seek its exclusion because it improperly comments on the defense's credibility, for the purpose of discrediting the credibility of the Defendant officers. *See, e.g., U.S. v. Charley*, 89 F.3d 1251, 1267 (10th Cir. 1999) ("In general, expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not "assist the trier of fact" as required by Rule 702").

      Finally, Defendants contend that the factors on which Mr. Reiter relies in his Code of Silence testimony to determine whether the Code is operating in a given circumstance are matters within the general knowledge of a lay person. These factors or elements include: officers being in a position to have seen or heard an incident yet do not acknowledge that is occurred; officers stating they were doing something at a critical moment when their focus should have been on that critical moment; officers purposely remaining oblivious to a particular situation; formation of cliques within an agency; and the existence of retaliation against officers who do come forward.

      The Court is inclined to agree with Defendants that the operation of a "Code of Silence" is within the general grasp of a lay person. I am also inclined to view such testimony as more prejudicial than probative, and am not convinced such testimony would be helpful to the jury. However, the Court will follow Plaintiffs' suggestion, and wait until trial to evaluate the evidence. At that time, Mr. Reiter may make a proffer outside the presence of the jury, and the Court will determine whether testimony regarding the Code of Silence is appropriate.

## V.     Exclusion of Other Evidence

In their motion (Doc. 255), Plaintiffs move to exclude any expert testimony, whether opinion or factual, of second-hand observations of the demonstration giving rise to this lawsuit based on video footage, photographs, deposition testimony, etc.  This is a broad request, devoid of any specificity or legal argument.  Therefore, the Court denies this motion until such time as specific exhibits are identified and pertinent arguments are made.

## CONCLUSION

After reviewing and considering both parties' motions, the Court sums up its findings thus:

Mr. Reiter's testimony on SOP violations by the APD – collectively or as to individual officers –  is not relevant or admissible for Plaintiff's Fourth Amendment claims, which are analyzed under a standard of objective reasonableness and totality of the circumstances.

The Court has previously ruled, and reiterates that ruling, that Mr. Reiter's testimony on SOP violations is admissible for Plaintiffs' First Amendment claims in order to allow jurors to determine whether impermissible motive existed.

Mr. Reiter's opinion regarding whether APD personnel used excessive force meets *Daubert* reliability requirements, particularly under *Kumho* because the testimony is not scientifically based. However, testimony that police officers used unreasonable force is inadmissible in a Fourth Amendment inquiry, addresses the ultimate issue of liability which is for the jury to decide, and is more prejudicial than probative under Rule 403.  However, testimony regarding types of tools available to officers in a demonstration situation is relevant and will be admitted.

The Court defers ruling on the issue regarding testimony on the Code of Silence.  Mr. Reiter may make a proffer of the nature of this testimony at trial outside the presence of the jury,

13

at which time the Court will make a determination on the admissibility of this testimony.

Finally, the Court denies at this time, Plaintiffs' request to exclude any expert testimony, whether opinion or factual, of second-hand observations of the demonstration giving rise to this lawsuit based on video footage, photographs, deposition testimony, etc.  Plaintiffs do not refer to specific exhibits or provide argument on which to base their request.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion in Limine I Seeking Exclusion of Plaintiffs' Police Procedures Expert **(Doc. 110)**; and Plaintiffs' Motion in Limine Seeking Limitations on Certain Expert Opinion Testimony of Defendants and Plaintiffs Police Procedures and Practices Experts **(Doc. 255)** are hereby granted in part and denied in part as set forth in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE